CIRCUIT COURT OF MARYLAND FOR PRINCE CHARLES COUNTY
200 Charles Street, La Plata, Maryland 20646

CIVIL DIVISION

M.S.              )
                  )
                  )
                  )
     and          )                C 14-1891
                  )
SHEILA SPENCER    )
9861 Frankfort Drive )
Waldorf, Maryland 20603 )
          Plaintiffs )
                  )
v.                )
                  )
                  )
                  )
JOE WESLEY RESPRESS III, )
10810 Winchester Street )
Waldorf, Maryland 20602 )
                  )
CHARLES COUNTY, MARYLAND, )
209 Baltimore Street )
La Plata, Maryland 20646-2150 )
                  )
CHARLES COUNTY, MARYLAND, )
BOARD OF EDUCATION, )
5980 Radio Station Road )
La Plata, Maryland 20646-2770 )
                  )
ROBERTA S. WISE, CHAIRMAN, )
CHARLES COUNTY, MARYLAND, )
BOARD OF EDUCATION, )
5980 Radio Station Road )
La Plata, Maryland 20646-2770 )
                  )
JAMES E. RICHMOND, Former )
Superintendent of Schools )
CHARLES COUNTY, MARYLAND, )
11569 Beacon Hill Court )
Swan Point, Maryland 20645-2216 )

CHRYSTAL BENSON, PRINCIPAL,  )
Westlake High School  )
311 Oak Avenue  )
La Plata Maryland 20646-5983  )
  )
ANDTERRI EL AMIN, Counselor,  )
Westlake High School  )
  )
  )
One unknown official of  )
West Lake High School,  )
Charles county, Maryland,  )
  )
and one other unknown official  )
of a Charles County, Maryland  )
School.  )

## COMPLAINT FOR DAMAGES

(Negligence, failure of duty to protect,
wanton and reckless failure to protect,
negligent failure to properly select, train
and supervise employee, child abuse,
negligent and intentional infliction
of emotional distress,
child molestation, statutory rape,
42 USC 1983 civil rights violation)

1. Jurisdiction of the subject matter is based upon the locus of the tort(s), in Charles County, Maryland.

2. Jurisdiction of the persons is based upon the commission of criminal acts involving sexual abuse and statutory rape of a minor child, under the age of consent, which occurred in Charles County, Maryland, by one Joe Wesley Respress, III, and negligent and reckless acts of Charles County (hereinafter the County), the Charles County Board of Education (hereinafter the Board), the Chairman of the Board of Education, Ms. Roberta S. Wise, the Superintendent of Schools James E. Richmond, Ms. Chrystal Benson, formerly Principal of the Maurice J. McDonough High School and presently Principal of West Lake High School, Ms. ANDTERRI El Amin, Guidance Counselor, one unknown official of West Lake High School, Charles County, Maryland, and one unknown official of a McDonough High School, all of whom held positions of authority and had official responsibilities for policies and practices of Charles County Schools before and during the period when the abuse of this child occurred, pursuant to *Courts and Judicial Proceedings* Sec. 6-102, and 6-103.

3. Joinder is proper pursuant to Maryland Rule(s) 1-211 and 2-212.

4. M.S. is a child of fifteen years, and is a resident of Charles County, Maryland. She lives with her mother, Sheila Spencer. M.S.'s molestation by Mr. Respress has caused extreme emotional distress, indeed, anguish, to M.S. and to her mother Sheila Spencer. Anyone would expect such treatment to cause deep anguish to both mother and daughter.

5. Defendant Respress was hired as a substitute teacher, and worked in that capacity at West Lake High School. M.S. was 15 years of age at the time. Mr. Respress gave alcohol to M.S.; initially bringing alcohol to the school, Mr. Respress entered into a sexual relationship with M.S. which began no later than May 1, 2013, and continued to July 25, 2013. Mr. Respress coerced M.S., who was, in any case incapable of consent, into vaginal intercourse, anal intercourse, fellatio, and cunnilingus, as well as sending nude photos of herself to him. In addition, he provided to her nude photographs of himself, as well as a video of him masturbating, and had her send him nude photographs of herself. Mr. Respress has since been convicted of a number of criminal acts committed against M.S. In addition, there is a likelihood that some of the photographs have been published on the internet, with the inevitable consequence that these photographs will be available for viewing for the rest of time. Every act herein noted amounted to a crime, sexual assault, rape, and/or child pornography, or other forms of illegal and lewd conduct.

6. Mr. Respress had previously worked as a teacher or substitute teacher at McDonough High School. He was fired from that position after he was discovered to have exchanged inappropriate phonographs with an underage female student there. All official bodies and all defendants, therefore, knew, or should have known, that Mr. Respress had an unhealthy sexual interest in underage girls. Indeed, at the sentencing of Mr. Respress, the States Attorney for Charles County voiced his suspicion that Respress specifically took the job of substitute teacher in order to have access to underage girls. In spite of his history, Mr. Respress was hired as a substitute teacher at West Lake High School.

7. The hiring of Mr. Respress, after his unfitness for such a position was known to the school district, and the access his position provided to young girls, and, particularly to M.S., as well as other failures, amount to negligent failure to properly select, train and supervise Mr. Respress by the school district, by Ms. Benson, and by particular individuals within the system, including but not limited to the individual who hired him as a substitute teacher at West lake High School, and the person who should have recorded his earlier discharge as a substitute teacher, and made that information available in some fashion to other school officials throughout the school district and the state.

8. The failure of the Board of Education, and its Chairman, Ms. Roberta S. Wise, and of the then Superintendent of Education, Mr. James E. Richmond to put in place some simple mechanism to assure that a person with a known interest in underage girls not be presented with access to them, and to ascertain that the system was effective, violates the constitutional right of M.S. to be protected from sexual abuse at the hands of a teacher. The absence of such

an effective screening procedure constitutes a custom of practice that affords the "state action" that engages liability under 42 USC 1983. In addition, the failure to institute an effective screening process amounts to reckless disregard for, and deliberate indifference to the danger presented by the hiring of any person as a teacher who is known to have an interest in underage girls. That dereliction of duty is so gross that Ms. Wise and Mr. Richmond are liable in their individual capacities, as well as their official capacities, and the plaintiffs demand punitive damages from these two individuals.

9. Defendant Chrystal Benson was Principal at Westlake High School when these events occurred, and had previously been Principal at McDonough High School, where Mr. Respress was employed when he was charged for exchanging inappropriate photographs with an underage girl. Ms. Spencer had direct supervisory responsibility for Mr. Respress at Westlake. It would be unlikely that Ms. Benson was unaware of the allegations, or of the charges against Mr. Respress when he worked at McDonough. For Ms. Benson to permit Respress, with his history of interest in underage girls, access to underage girls, is beyond ordinary negligence, and must be seen as gross recklessness and deliberate indifference to the danger to young girls posed by Mr. Respress, utter dereliction of her duty, which proximately caused Mr. Respress to have access to M.S.
For that reason, both plaintiffs assert their claim against Ms. Benson both in her official capacity and in her individual capacity.

10. After reporting the sexual abuse of M.S.        , M.S.    's mother, Sheila Spencer and M.S.     met with West lake High School's Guidance Counselor, Ms. ANDTERRI EL Amin, whose apparent orientation was to blame the victim. In the conference, at one point, Ms. El Amin inquire of Ms. Spencer if she might use profanity. Ms. Spencer was puzzled, but consented to Ms. El Amin's using profanity, whereupon Ms. El Amin stated to M.S.     "I would like to take you home to meet my son but I would be afraid that you would ---- (coarse slang term for having intercourse) him." Ms. Spencer's consent patently did not extend to such coarse usage, nor to the insulting suggestion that              morals were deficient, with the clear implication that this child was responsible for the criminal acts of her substitute teacher. The unwarranted and hurtful comment was distressing, in the extreme, to both mother and daughter, both of whom were already distraught over the abuse. The comment was unprofessional, and damaging, as well: children who are the victims of abuse are known to tend to believe that the abuse is their fault, so this comment, which in blaming M.S.         er for the sexual abuse, for her own statutory rape, coming from such an authoritative official, can only be seen, at a minimum, as exacerbating the harm done to her, as well as minimizing the responsibility of Joe Respress, the school system and all responsible officials. Ms. El Amin is liable for intentional and negligent infliction of emotional distress, and whatever her presumed credentials may be, for malpractice in her professional capacity. Such callous and judgmental and accusatory commentary from any so called counselor shocks the conscience. Seen in the context of Mr. Respress' hiring at West Lake High School, after the earlier incident, this comment and the attitude it evinces, bespeaks a culture of disregard for the safety of students, a mentality that says the student must just take her chances, and, if anything wrong occurs, of diminishing the responsibility of every culpable person and institution, and, instead, placing it on the student. To the extent that Ms. El Amin represented the School system, her comments were self serving. The comments, were also, her own, and are an extreme departure from any responsible approach to counseling a student or

from affording comfort to a distraught mother that Ms. El Amin is liable in her individual capacity, as well as in her official capacity. Ms. El Amin's comments amount to negligent and intentional infliction of emotional distress for which both plaintiffs demand compensatory and punitive damages.

M.S.

11. Damages to include negligent and intentional infliction of emotional distress, including the harmful effects of having been sexually exploited by an older man in a position of authority, public humiliation, guilt and shame, and the possibility that videos of this child in any number of compromising situations may have been published on the Internet where they will be available forever. Damages also include the wholly unjustifiable, hurtful and harmful remarks of Ms. El Amin, which remarks constitute negligent and intentional infliction of emotional distress and malpractice. In addition, the failure of the School Board, the Chairman and the Superintendent to put in place a system that would effectively protect students generally, and M.S. in particular is a violation] M.S. 's constitutional rights pursuant to Section 42 USC 1983. Economic damages to M.S. include costs of psychotherapeutic counseling, to the present and prospectively.

12. Damages to Sheila Spencer include negligent and intentional infliction of emotional distress, which distress was proximately caused by the negligent failure to select, train and supervise the substitute teacher, and by the callous remarks of Ms. El Amin, which remarks implied that Ms. Spencer's daughter was responsible for having been victimized by a predator. Ms. Spencer has endeavored to protect her daughter, with all the concern that a responsible mother should have, and in so doing, has been obliged to rely on the school system and the administrative organs of the County, the school system, and the school, itself, to keep her daughter safe from harm. Of the potential harm that might be anticipated to threaten her daughter, sexual exploitation by an older male teacher is always a danger, albeit a danger which, in the context of the way in which her daughter was exposed to this predatory teacher who took such an advantage of her daughter, should have easily been prevented. Her anguish at her daughter's abuse, and by the negligence and indifference by which this predator was given access to her daughter, is a natural and predictable consequence to these unfortunate events. In the context of the reckless disregard for what should have been, and, at least on the part of some school officials was, a known danger, the system, and at least some officials failed her, just as they failed her daughter. The ease with which the risk from Mr. Respress could and should have been obviated indicates that the level of recklessness and indifference was a failure of duty to Ms. Spencer, just as it was a failure of duty to her daughter. If the constitutional protections of 42 USC 1983, to keep the child safe from sexual abuse extend to her daughter, in this case, the magnitude of the reckless indifference to a danger to her daughter is so gross that it also amounts to a violation of a right for Ms. Spencer to send her child to school with assurance that her daughter would be safe there, and the protections of the constitution pursuant to 42 USC 1983 should extend to Ms. Spencer, herself, therefore, Sheila Spencer also claims damages pursuant to a violation her daughter's right to be protected from sexual abuse in her school.

WHEREFORE, Plaintiff, M.S. demands damages for her emotional distress

from Charles County, Maryland, the School District, the Board of Education, Ms. Wise, and Mr. Richmond, for negligent failure to select, train and supervise Mr. Respress, and for their failure to assure her safety from sexual abuse by a teacher in violation of her constitutional right to be free of such abuse, compensatory damages of One Million Dollars, as well as compensatory damages for present and prospective costs of psychological counseling in the amount of Fifty Thousand Dollars. In addition, for their reckless disregard of the danger presented by their failure to properly select, train and supervise Respress, and for their failure to put in place a screening mechanism that would preclude the hiring of persons who were known threats to underage girls, plaintiff demands compensatory damages for emotional distress in the amount of One hundred Thousand Dollars, and punitive damages in the amount of Five Hundred Thousand Dollars, each, from Ms. Wise and from Mr. Richmond. From Principal Benson, plaintiff Marissa Spencer demands compensatory damages in the amount of One hundred Thousand Dollars, and punitive damages in the amount of Five Hundred Thousand Dollars. Further, from Ms. El Amin, for the intentional and negligent infliction of emotional distress caused by her wholly inappropriate and accusatory comments, which cannot have been within the scope of her official duties, M.S. demands compensatory damages in the amount of One hundred Thousand Dollars, and punitive damages in the amount of Five Hundred Thousand Dollars.

For his betrayal of trust, and availing himself of his status as a persona of authority to rape and sexually abuse M.S., i.e., to commit a sexual assault, and for the consequent emotional distress, Plaintiff Sylver demands from defendant Joe Wesley Respress, III, compensatory damages of One Million Dollars, and punitive damages of Two million Dollars.

M.S. therefore, demands damages in total amount of Six Million, Seven Hundred and Fifty Thousand Dollars.

Plaintiff Sheila Spencer demands, for negligent and intentional infliction of emotional distress caused by the failure to select, train and supervise Mr. Respress, and for the negligent failure to put in place procedures and mechanisms that would have prevented giving this individual, with his known interest in underage girls, access to Ms. Spencer's daughter, Sheila Spencer demands compensatory damages of One Million Dollars, as well as compensatory damages for present and prospective costs of psychological counseling in the amount of Thirty Thousand Dollars. In addition, for their reckless disregard of the danger presented by their failure to properly select, train and supervise Respress, and for their failure to put in place a screening mechanism that would preclude the hiring of persons who were known threats to underage girls, plaintiff demands compensatory damages for emotional distress in the amount of One hundred Thousand Dollars, and punitive damages in the amount of Five Hundred Thousand Dollars, each, from Ms. Wise and from Mr. Richmond. From Principal Benson, plaintiff Sheila Spencer demands compensatory damages in the amount of One hundred Thousand Dollars, and punitive damages in the amount of Five Hundred Thousand Dollars. Further, from Ms. El Amin, for the intentional and negligent infliction of emotional distress caused by her wholly inappropriate and accusatory comments, which cannot have been within the scope of her official duties, Sheila Spencer demands compensatory damages in the amount of One hundred Thousand Dollars, and punitive damages in the amount of Five Hundred Thousand Dollars.

Plaintiff Sheila Spencer, therefore demands damages, in total, of Three Million, Four Hundred and Thirty Thousand Dollars.

Plaintiffs demand damages, in total, of Ten Million, One Hundred and Eighty Thousand Dollars.

Respectfully submitted,

*/s/ John P. Fatherree*

John P. Fatherree, Esquire
D Street NW, Ste. 300
Washington, D.C. 20004
Telephone (202) 847-2777
jjfatherree@aol.com

Tyler J. King, Esquire
Franklin Square Law Group, DCPC
1225 I Street NW, Suite 601-A
Washington, D.C. 20005
Telephone (202) 779-9711
(Tylerjayking@gmail.com)

Attorneys for Plaintiff

## JURY DEMAND

Plaintiffs demand trial by jury of twelve.

*/s/ John P. Fatherree*

John P. Fatherree, Esquire

TRUE COPY

*/s/ Sharon L. Hancock*

SHARON L. HANCOCK, CLERK

_____
Tyler J. King, Esquire

### CERTIFICATION(S) OF LICENSURE

I hereby certify that I am licensed to practice law in the state of Maryland.

_____
John P. Fatherree, Esquire

I hereby certify that I am licensed to practice law in the state of Maryland.

_____
Tyler J. King, Esquire